UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| ISRAEL CORONADO | § | |
| | § | |
| VS. | § | Civil Action No. 7:20-cv-00169 |
| | § | |
| THE CITY OF MERCEDES, HENRY | § | |
| HINOJOSA, and DAGOBERTO CHAVEZ, JR. | § | |

**PLAINTIFF ISRAEL CORONADO'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Israel Coronado respectfully submits this response in opposition to Defendants' partial motion to dismiss his Complaint. Coronado alleges Defendants abused their positions of authority to retaliate against, and to silence, Coronado. The Defendants intentionally and knowingly formed a retaliatory policy to intimidate Coronado, and this directly resulted in violations of Coronado's rights under the United States Constitution. Specifically, the City of Mercedes, through the Mayor and Chief of Police, sought to deprive Coronado of his liberty by arresting him without probable cause, all because Coronado exercised his right to question and criticize City of Mercedes officials, petition the City for redress of grievances, and to run for Mayor of Mercedes.

That Coronado was arrested without probable cause is fact. Months after his politically motivated arrest, the Hidalgo County District Attorney's office moved to dismiss the criminal complaint against Coronado. Prosecution of the sham arrest never occurred and all criminal liability was closed. The alleged actions that deprived Coronado of his freedom and rights *happened*. This is exactly the type of government corruption that 42 U.S.C. § 1983 is meant to expose. And recent United States Supreme Court precedent confirms the viability of Coronado's complaint.

1

The Court should deny Defendants' motion to dismiss and allow this case to proceed to full discovery so that Coronado and the public can learn the truth.

## FACTUAL BACKGROUND

On September 17, 2019, members of the Mercedes community attended an open meeting of the Mercedes City Commission. The agenda included action to censure, and to schedule a hearing to remove, Commissioner Leonel Benavidez who at the time of the meeting had served less than 5 months as Commissioner.

Up to that point, Commissioner Benavidez had developed a reputation of questioning the Mayor, the City Manager, the Chief of Police, and others within the City's leadership. Many community members attending the meeting, including Plaintiff Israel Coronado, saw the agenda items regarding censure and removal as a strong-arm tactic to silence a critic. Benavidez's supporters intended to speak out against the agenda items during the public comments section of the Commission meeting.

Seeing community activism as a threat to their effort to remove Benavidez, the Mayor and the Chief of Police did the unthinkable: They had the doors to City Hall locked before the meeting began. In doing so, they excluded dozens of members of the public who were ready to speak. They also locked out reporters and camera crews intending to cover the City Commission's discussion.

Inside City Hall, before the start of the meeting scheduled for 6:00 p.m, Mayor Hinojosa and three other City Commissioners, along with the City Manager and City Attorney, sat at the dais overlooking the crowd that had managed to get inside City Hall before it was locked. A member of the public attending the meeting was upset at what he perceived was a shove by the City Attorney on his way into the meeting. After tense words were exchanged, the members of the

public speaking to the City Attorney began to take their seats. But rather than allow them to sit, Mercedes PD arrested the residents.

Israel Coronado was among those gathered at Mercedes City Hall to protest. He watched horrified as police officers made arrests. Before the start of the 6:00 p.m. meeting, three residents were arrested. Their charges included disrupting the Commission's meeting, despite the fact that the meeting had not yet begun. Rather than participate further, two City Commissioners walked out. However, the City Commission meeting began as scheduled, exactly at 6:00 p.m. Coronado was not arrested that evening for disrupting the Commission meeting. Instead, Coronado continued to observe.

Coronado was well known by City of Mercedes officials by that September 17, 2019 meeting because he had been a consistent vocal critic of the City Commission. Coronado's social media accounts are full of impassioned speeches and explicit commentary on the state of affairs in Mercedes government. Soon after the floods of June 2018, Coronado created a citizen's movement to improve drainage in the City of Mercedes, dubbed Mercedes Will Drain Again. A Facebook page created for this effort allowed Mercedes residents to voice their concerns to City officials. Coronado himself consistently spoke directly to City officials through videos published to the Facebook page, criticizing lack of City services to clean existing drains and spending taxpayer money on frivolous expenditures instead of addressing drainage issues.

After the floods of June 2019, Coronado and a group of volunteers distributed supplies to affected residents. He then set began speaking out regarding drainage improvements and demanded action from local government.

After the arrests during the September 2019 meeting, Coronado organized a recall effort of the Mayor of Mercedes and City Commissioner Leandro Villareal. Through his campaign to

3

collect signatures, he addressed the public about political oppression, lack of transparency, and poor fiscal management of taxpayer money. After collecting the required number of signatures for the recall effort, Coronado turned in the signatures only to have them rejected by the City Secretary.

On November 25, 2019, Coronado announced that he would run for Mayor of Mercedes. In his announcement, he denounced several actions taken by the Mercedes City Commission. Most recent to the announcement, Coronado criticized the City's purchase of a $65,000 Christmas tree and two related custom signs imported from France for $27,000. Including shipping costs, in total, the LED tree cost the City $107,000. Coronado publicly questioned the purchase, urging that the money would have been better spent to fix potholes, clean the City, and improve drainage.

In response, the City of Mercedes' elected leadership deployed the full force of its police powers to prevent Coronado from exercising his clearly established First Amendment right to criticize them and to run for elected office. The City's retaliation was swift, calculated, and deliberate, authorized and instigated entirely by the final decision makers—the Mayor and Chief of Police.

On December 3, 2019, Coronado was arrested. That night, Coronado and several other Mercedes residents attended the Mercedes City Commission meeting to observe the Commission deliberate over public agenda items. At approximately 9:08 p.m., three hours after the start of the meeting, the Commission entered closed session. While in closed session, Coronado left City Hall for what he thought was a brief trip. He drove to a nearby Little Caesars to pick up pizza for the community activists who would remain with him at City Hall until the end of the City Commission meeting.

What Coronado did not know was that he was followed by police officers on the orders of the Mayor and Chief Chavez. Once at the Little Caesars, police officers arrested Mr. Coronado. The charge was as unexpected as the arrest itself: disrupting a meeting or procession, a Class B misdemeanor.

That the charge was a complete fabrication was plainly obvious: Coronado was not in a public meeting at the time of his arrest. He was buying pizza for hungry activists. In fact, the specific meeting that Mr. Coronado was accused of disrupting—the September 17 meeting where three other residents were arrested—had occurred three months before the night of his arrest.

Despite the outrageousness of the charge and the naked abuse of power, Coronado did not resist arrest. He complied with all instructions and called his wife to pick up his vehicle. Mercedes police insisted on booking Coronado in the City jail for the night.

The City's Chief of Police conspired in the action as well. As Mercedes top law enforcer, Chief Chavez should have known the limits on criminal arrests in retaliation for protected First Amendment activity. Nevertheless, he executed and sanctioned the Mayor's unconstitutional retaliation, and presented an arrest warrant to Justice of the Peace Gilbert Saenz based on false statements.

On May 15, 2020, the Hidalgo County District Attorney's office moved to dismiss the criminal complaint against Mr. Coronado, without ever prosecuting the charge. With that, all criminal liability was closed, but the public shaming, mental anxiety, and corrupt actions instituted by the Defendants have already taken effect.

## **ARGUMENTS AND AUTHORITIES**

**I.      Pleading Standard**

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir.2009) (internal citation omitted). When confronted with a motion to dismiss, the underlying complaint is reviewed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The district court limits its review to the contents of the pleadings and any attachments to the complaint. Fed. R. Civ. P. 10(c), 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

Defendants' motion for partial dismissal—by its very name—suggests that Defendants acknowledge that at least some of Coronado's claims may proceed to discovery. However, Defendant does not make clear which of Coronado's claims are in or out of their motion.

Rather than attempt to parse through Defendants' motion, the question for the Court is whether the allegations in the Complaint satisfy the pleading standards as set forth by relevant law and precedent. They do. As explained more fully below, Coronado has given Defendants a full description of their misconduct that satisfies Rule 12(b)(6).

II.     **Coronado Sufficiently Alleges that the City of Merce is liable under § 1983 for Instituting an Unlawful Retaliatory Policy that Resulted in the Constitutional Violations**

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Municipalities are considered "persons" who may be sued directly under Section 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). However, "a municipality cannot be held vicariously

6

liable for the constitutional torts of its employees or agents." *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 615 (5th Cir.1999) (citing *Monell*, 436 U.S. at 694). A local government may be sued under Section 1983 "'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers.'" *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 1988) (plurality opinion)). To establish municipal liability under Section 1983, a plaintiff must prove three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose moving force is the policy or custom. *Id.* (quotations omitted).

Here, the City of Mercedes raised no issues regarding any of these elements. Nor could it. Coronado expressly alleged that the Mayor of Mercedes and the Chief of Police have final policymaking authority, Compl. ¶ 37, 51; that Defendants formed an official policy to retaliate against Coronado, *id.* ¶ 32, 44; and that the City's policy to retaliate directly resulted in Coronado's December 3, 2019 arrest, *id.* ¶ 31, 35, 37, 51.

In fact, Coronado's allegations are in line with recent Supreme Court precedent. In *Lozman v. City of Rivera*, 585 U.S. ——,138 S. Ct. 1945 (2018), plaintiff Lozman had filed a civil against the City of Rivera in Florida. *Id.* at ——, 138 S. Ct. at 1949. Several months later, Lozman attended a City Council meeting and began speaking about arrests of county and former city officials. *Id.* A City Council member asked Lozman to stop speaking, and when he refused, Lozman was arrested. *Id.* at ——, 138 S. Ct. at 1949–50. In his complaint against the City and City officials for violations of his civil rights, Lozman alleged that City policymakers in advance of the meeting had devised a retaliatory plan to arrest him because of his lawsuit against the City and prior public criticism of

7

public officials. *Id.* Pursuant to that alleged official policy, Lozman was arrested a City Council meeting. *Id.* at ——, 138 S. Ct. at 1949–50.

The Supreme Court found that Lozman's claims were actionable. *Id.* at 1954-55. The Supreme Court highlighted specific aspects of Lozman's allegations supporting the need for its holding. The Court noted that Lozman had alleged "more governmental action than simply an arrest." *Id.* at 1954. Specifically, Lozman had claimed that the City itself retaliated against him pursuant to an "official municipal policy" of intimidation. *Id.* In particular, Lozman had alleged that the City, through specific policy makers, formed a premeditated plan to intimidate him in retaliation for his criticisms of city officials. *Id.* Lozman also specifically alleged that the City, through its policymakers, executed its plan by ordering Lozman's arrest at a city council meeting. *Id.* The Court did not simply find that Lozman could maintain his claims; maintenance was *required* due to a compelling need:

> An official retaliatory policy is a particularly troubling and potent form of retaliation, for a policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer. An official policy also can be difficult to dislodge. A citizen who suffers retaliation by an individual officer can seek to have the officer disciplined or removed from service, but there may be little practical recourse when the government itself orchestrates the retaliation. For these reasons, when retaliation against protected speech is elevated to the level of official policy, there is a compelling need for adequate avenues of redress.

*Id.*

*Lozman* makes clear that Coronado's allegations regarding the City's unconstitutional policy and actions to retaliate against Coronado should be allowed to move forward.

### III. Coronado Sufficiently Alleges that the Individual Defendants are liable under § 1983

To state a personal-capacity claim under § 1983, plaintiffs must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured

by the laws or Constitution of the United States, or that defendants' wrongful actions were causally connected to such a deprivation. *James v. Texas Collin County,* 535 F.3d 365, 373 (5th Cir.2008).

Here, the individual defendants have not raised any defects of the pleadings against them in their individual capacities. And Coronado easily satisfies the pleading requirements. Coronado specifically alleges that the individual Defendants, Mayor Henry Hinojosa and Police Chief Dagoberto Chavez, Jr., acted under color of law through their respective City positions, Compl. ¶ 4, 5, 33, 42; and knowingly and intentionally punished and retaliated against Coronado because he exercised his rights of free speech, to petition the City of Mercedes for the redress of grievances, and to run for Mayor of Mercedes, *id.* ¶ 43, 51. Moreover, the individual Defendants failed to raise any arguments that they are entitled to qualified immunity based on Coronado's complaint. Coronado therefore does not present a qualified immunity analysis in this response.

### IV.   Coronado Can Maintain Fourteenth Amendment Violations as an Additional Basis for § 1983 Liability.

Defendants arguments regarding the substance of Coronado's pleading (i.e. arguments not addressing damages) appear to be limited to Defendants' assertions that Coronado cannot plead a Fourteenth Amendment Due Process claim.[1] That is, Defendants seem to seek only that the Court not allow Coronado to maintain a § 1983 action on the basis of Fourteenth Amendment violations. *See, e.g.*, Motion at ¶ 4.02 (asserting that the Fourth Amendment provides the standard for evaluating wrongful arrest so "Coronado's alleged Fourteenth Amenment due process claims … must therefore be dismissed"). In support, Defendants present two main arguments: (1) that First and Fourth Amendment violations cannot also provide a basis for an alleged Fourteenth Amendment violation, Motion at ¶ 4.02, and (2) Coronado has not identified a property right so

---

[1] Defendants also argue Coronado failed to properly allege a "federal conspiracy" claim. Motion at ¶ 4.09-.12. But Coronado has not asserted such a claim.

cannot maintain either a procedural due process claim nor substantive due process claim under the Fourteenth Amendment, Motion at ¶ 4.06.

Defendants have missed the mark on both accounts. Coronado has alleged that Defendants violated his Fourteenth Amendment rights to due process that is separate and apart from violations of his First and Fourth Amendment rights. Compl. ¶ 39-40. That is, Defendants deprived Coronado of his liberty "without due process of law." *See Baker v. McCollan*, 443 U.S. 137, 145 (1979). Defendants determined that Coronado be punished and retaliated against without providing any process. Coronado also alleged that Defendants violated Coronado's Fourteenth Amendment right to equal protection because of the "discriminatory and disparate treatment of Coronado" by the City. Compl. ¶ 40. The Defendants decision to single out and deprive Coronado of liberty supports this claim.

Ultimately, the thrust of Coronado's complaint is that Defendants retaliated against Coronado based on exercising his First Amendment rights (i.e. the rights to petition the government for redress of grievances, to speak freely on public issues, and to run for elected office), Compl. ¶ 41-44 and violated his Fourth Amendment right to be free from wrongful arrest, Compl. ¶ 51-57. Coronado should, however, be allowed to maintain the entirety of his action against Defendants.

## V. Defendants' Arguments Regarding Damages Are Not Proper.

Defendants argue that Coronado cannot maintain a claim for exemplary damages. However 42 U.S.C. § 1983 provides for punitive damages in appropriate circumstances. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267–68 (1981) ("The Court previously has indicated that punitive damages might be awarded in appropriate circumstances in order to punish violations of constitutional rights."). Likewise, § 1983 provides that litigants may be awarded attorneys' fees

where damages are not otherwise nominal. *See Farrar v. Hobby*, 506 U.S. 103, 105 (1992). As a result, Coronado can maintain claims for both exemplary damages and attorneys' fees.

Dated: August 4, 2020

                                        */s/ Omar Ochoa*
                                        Omar Ochoa
                                        S.D. Tex. Bar No. 2081960
                                        **OMAR OCHOA LAW FIRM PC**
                                        121 N. 10th Street
                                        McAllen, Texas 78501
                                        Telephone: (956) 630-3266
                                        oochoa@omarochoalaw.com

                                        **Attorney for Israel Coronado**

## CERTIFICATE OF SERVICE

On August 4, 2020, I filed the foregoing document using the District Clerk's Electronic Case Filing system, and all counsel of record will receive electronic notice via the same. The individuals and parties identified below have been served in the manner indicated:

J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822
email: arnold@aguilarzabartellc.com
Aguilar Zabarte, LLC
990 Marine Drive
Brownsville, Teas 78520
(956) 504-1100
(956) 504-1408 (fax)
email: arnold@aguilarzabartellc.com

                                        */s/ Omar Ochoa*
                                        Omar Ochoa